HARKREADER *v.* TURNPIKE CO.

(*Nashville.*    January 25, 1899.)

TAXATION.    *Charter exemption of turnpike company.*

A turnpike company is exempt from *ad valorem* but not from
privilege tax, under a clause in its charter providing that
"the property in said road, when completed, shall vest in said
company and their successors, for the purpose of a highway,
which shall be free for all persons, on the terms and conditions
herein prescribed, and the same shall not be liable for taxation."

Case cited and approved: Railroad *v.* Harris,  99 Tenn., 696.

Cited and distinguished: Memphis *v.* Bank, 91 Tenn., 556; Mem-
phis *v.* Insurance Co., 6 Bax., 527.

FROM WILSON.

Appeal in error from Circuit Court of Wilson
County.    W. C. HOUSTON, J.

Attorney-general PICKLE for Harkreader.

E. E. BEARD and R. P. McCLAIN for Turnpike
Company.

WILKES, J.    This is a suit brought by the turn-
pike company to recover back a privilege tax paid
the State under protest.   The tax was assessed under
the provisions of an Act of the General Assembly

passed at the extra session of 1891, providing for a privilege tax upon turnpikes that collect tolls at their gates both ways the same day. The trial Judge held the company not liable for the tax, and gave judgment that it be refunded, and the defendant appealed and assigned errors.

The company insists that it is not amenable to this Act nor liable for this tax because of an exemption clause in its charter, as follows: ''The property in said road, when completed, shall vest in said company and their successors for the purpose of a highway, which shall be free for all persons on the terms and conditions herein prescribed, and the same shall not be liable for taxation.'' But for this provision, the tax could clearly be collected under the ruling in the turnpike cases reported in 8 Pickle, 369, and the question is as to the effect of this charter exemption.

It is insisted that, recognizing the principle that clauses exempting from taxation shall be strictly construed, still the provision in this charter is broad enough to exempt the company from all taxation, and that, viewed in the light of the policy of the State in 1836, when this charter was granted (which was to encourage public internal improvements), such was the intention and purpose of the Legislature. It is ingeniously argued that it is the highway that is exempt—that is, the entity, with all its uses, property, and franchises, including the privilege of operating it—and not simply its property, and that the

exemption of the highway meant the use and the operation of the highway, and not simply the exemption of its tangible property. It is evident that when this charter was granted the two systems of State taxation—*ad valorem* and privilege—had already been put into practical operation, and were fully recognized by the Constitution of 1834. This charter was granted to men who were of the highest note in the State at that date, among the charter members being Andrew Jackson, James C. Jones, Stokely Donelson, Philip Lindsley, and others of scarcely less repute, who were certainly as familiar with the law as any citizen of the State at that date, and it is argued that if they intended to secure exemption from both *ad valorem* and privilege taxes they would have so provided in express terms. Perhaps this argument is not strictly correct, and a more rational view is that at that period in the history of our State the nice distinctions made in the modes of taxation, to evade taxation on the one hand and to apply it on the other, had not been reduced to the fine art it has become in later years; and it is more than probable that it escaped the observation of these distinguished gentlemen that the road might be exempt from one mode or manner of taxation, and yet be subject to another. We think, applying the rules of grammatical construction to the provision of exemption, it means the property of the corporation shall be exempt, and, if read properly, is, in substance, this: that the property shall not be liable

to taxation, but shall vest in the corporation for purposes of a highway, . to be used by the public on the terms set out in the charter.

If we adopt the rule of strict construction applicable to charter exemptions, the same result would follow as in case of the grammatical construction. We think the case is identical in principle with that of *Railroad* v. *Harris*, 15 Pickle, 696, except that in the latter case certain species of property—designed, no doubt, to cover all that was taxable—were enumerated, while in the present case. the proper construction of the language is that all property of the company should be exempt.     But the property of a corporation is one thing and the privilege of operating that property under franchises granted by the Legislature is another and separate thing, and when one is exempt ·it does· not follow that the other is also.     To have that effect, such must be the plain provision or unavoidable construction of the exempting clause.     Hence, as we think, the case of *Memphis* v. *Bank & Insurance Cos.*, 91 Tenn., 556, is not an authority for sustaining a grant of exemption in this case.     In that case the charter provided that the tax imposed by it should be in lieu of all other taxes.     There was no exemption involved. It was simply a manner of taxation, designed to reach not only the property and stock, but, also, the business and occupation of the company, and to determine the tax as à whole.     The case of *Memphis* v. *Hernando Ins. Co.*, 6 Bax., 527, is a case of the

same class and based upon the same idea—not of exempting the property or the privilege, or of taxing the one and exempting the other, but of providing a certain tax for the capital invested and the enjoyment of the franchises granted, and was a means of determining what that tax should be.

We are of opinion that the exemption in this charter relieves the company from *ad valorem* taxation upon its property, but not a privilege tax for the right to exercise the franchise granted to them in the use of the property.

It may be argued that the exemption of the property would thus become a barren grant, since its value depends alone upon the use to which it may be put—that is, its operation as a highway. But a similar objection might be made to the taxation of merchants, who, under the law, were required to pay both an *ad valorem* tax upon their stocks of goods and a privilege tax for the privilege of selling them. In such case, the only use the merchant has for the goods is to sell them, and a plausible argument could be made, that, when he paid an *ad valorem* tax upon their value, he should not · be required, in addition, to pay a tax for the privilege of selling them. The same argument was urged in the case of *Railroad* v. *Harris*, where the property of the railroad was exempt, and it was insisted this was but a mockery if it could be made to pay a tax for the privilege of using the property.

Harkreader *v.* Turnpike Co.

We do not think the exempting clause in this charter is broad enough to relieve the company from a privilege tax as well as a property tax, and the judgment of the trial Judge is reversed, and case dismissed at the cost of the turnpike company.